CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
AUG 10 2005
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:05CR00012 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CHRISTOPHER EARL TUTEN, | ) | |
| a.k.a. "C-Note" | ) | |
| | ) | By:  B. WAUGH CRIGLER |
| Defendant, | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with willfully and knowingly attempting and or combining, conspiring, confederating and agreeing together with persons known and unknown to the Grand Jury, to commit the following offenses against the United States, to wit: possession with intent to distribute and to distribute more than fifty grams of a mixture or substance containing a detectable amount of cocaine base, or "crack" cocaine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), all in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A); in Count Two with knowingly and unlawfully using or carrying a firearm, during and in relation to or in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, conspiracy to distribute crack cocaine, and possession with intent to distribute crack cocaine, as set forth in Count One, in violation of 18 U.S.C. § 924; in Count Three with knowingly and unlawfully using or carrying a firearm, during and in relation to or in furtherance of a drug trafficking crime for which he may be prosecuted

in a court of the United States, to wit, conspiracy to distribute crack cocaine, and possession with intent to distribute crack cocaine, as set forth in Count One, in violation of 18 U.S.C. § 924(c); in Count Four with knowingly and intentionally possessing with intent to distribute and did distribute 5 grams or more of a mixture or substance containing a detectable amount of cocaine base or "crack" cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); in Count Five with having been convicted of a crime punishable by a term of imprisonment exceeding one year, and did possess a firearm, specifically a Taurus .357 revolver, serial number PC376901, which firearm had traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1); and in Count Six with having been convicted of a crime punishable by a term of imprisonment exceeding one year, did possess a firearm, specifically an R.G. Industries, .22 caliber revolver, serial number L608022, which firearm had traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

On August 2, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One and Two of the Indictment pursuant to a plea agreement between defendant and the government.[1]

At this hearing the defendant was placed under oath and testified that his full legal name is Christopher Earl Tuten, that he was born on November 21, 1976, and that he obtained an associate degree in general education. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no

---

[1] The plea agreement sets forth only the charges to which defendant is pleading guilty, not all the charges set forth in the Indictment.

2

other physical or mental condition that impaired his ability to understand the nature of the proceedings being held.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts One and Two, including any facts related to sentencing. Defendant's counsel stated that he had reviewed each of the terms of the plea agreement with the defendant and was satisfied that he understood those terms.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to

3

the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum penalty provided by law for Count One is life imprisonment and a $4,000,000 fine, together with supervised release. The defendant was also informed that the minimum mandatory sentence for Count One is ten years imprisonment, together with supervised release. The defendant was informed that the maximum penalty provided by law for Count Two is life imprisonment and a $250,000 fine, together with supervised release. The defendant was further informed that the minimum mandatory sentence for Count Two is five years imprisonment, together with supervised release. The defendant was informed that the sentence imposed in Count Two must run consecutive to the sentence imposed in Count One. The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that

the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report had been prepared and both parties had been given an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a three-level (3) reduction under USSG § 3E1.1(a) for acceptance of responsibility. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant further stated that he understood that the government will not seek a sentence higher than the guidelines would recommend to the court. The defendant stated that he knew that parole had been abolished and that if he is sentenced to imprisonment he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of the charges against him, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Counts One and Two of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

Had this case proceeded to trial, the government would have proved by competent and admissible evidence, beyond a reasonable doubt, that the defendant committed acts that constitute a

6

Case 5:05-cr-00012-GEC   Document 64   Filed 08/10/05   Page 6 of 11   Pageid#: 181

violation of Count One of the Indictment before the Court in this case, a violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846. Further, the government would have proved beyond a reasonable doubt that the defendant committed acts that constitute a violation of Count Two of the Indictment in violation of Title 18, United States Code, Section 924. Specifically, a portion of the government's evidence would have demonstrated that within the time period set forth in Count One of the Indictment, the defendant, Joann Yvonne Carter, Khalil Jihad-Labeeb Abdullah, and others conspired to distribute fifty grams, or more, of crack cocaine in Frederick and Warren counties, which are located in the Western District of Virginia.

A confidential informant would have testified that a controlled buy was made from the defendant on February 23, 2005, in Warren County, Virginia. That same day, investigators executed a search warrant on the defendant's Budget Inn Motel room and recovered 46 grams of crack cocaine, a Taurus .357 revolver, a R.G. Industries .22 caliber revolver, scales, and $2,000 in U.S. currency.

Investigators would have testified that while conducting surveillance of the Budget Inn Motel, Abdullah was seen departing from the defendant's room and drove away in a vehicle registered to Carter. Abdullah was stopped by investigators and he agreed to provide information after acknowledging and waiving his Miranda rights. Abdullah stated that he and the defendant had been distributing crack cocaine in the Western District of Virginia for four weeks and each week distributed three to eight ounces of crack cocaine that was supplied by Carter. Abdullah later stated to investigators that from about January 2005 through February 24, 2005 he and the defendant made twelve trips to acquire crack cocaine from Carter. They distributed the crack cocaine from an individual's residence in Winchester, Virginia. On eleven of the twelve trips, they acquired one to one and a half ounces of crack cocaine from Carter. On the last trip, the defendant acquired five ounces of crack cocaine.

During the period of the conspiracy, Abdullah stated that he made ten to twenty sales of crack cocaine for the defendant.

On February 24, 2005, the defendant was interviewed by an ATF agent at Warren County Jail after acknowledging and waiving his Miranda rights. The defendant stated that he and Abdullah had been distributing crack cocaine in the Western District of Virginia for six weeks and each week distributed eight to sixteen ounces of crack cocaine that was supplied by Carter. The defendant placed a recorded telephone call to Carter and they discussed acquiring four to eight ounces of crack cocaine from Carter's source later that day. The defendant later stated to investigators that he and Abdullah purchased crack cocaine from Carter on about ten occasions beginning on the last week of January up to the time of their arrest. The defendant stated that on each visit they collected two to three ounces of crack cocaine, except on the last visit when they collected four and a half ounces.

Investigators contacted Carter at her Days Inn Motel room where she was arrested without incident. Carter gave investigators consent to search her room and they recovered digital scales with cocaine residue, an original manufacturers box for a R.G. Industries .22 caliber revolver, and $1,800 in U.S. currency. Carter later stated to investigators that she distributed crack cocaine to the defendant and Abdullah on four occasions over a two week period. Carter stated that the first three transactions were for one to one and a half ounces of crack cocaine. However, the last transaction on February 22, 2005, was for four ounces of crack cocaine. Carter further stated that the defendant was the primary distributor of crack cocaine and Abdullah distributed and transported.

A witness would have identified the defendant and Abdullah and testified that the witness assisted them in distributing crack cocaine from the witness' residence on numerous occasions to individuals residing in Winchester, Middletown, and Front Royal, Virginia. The witness would have

8

Case 5:05-cr-00012-GEC   Document 64   Filed 08/10/05   Page 8 of 11   Pageid#: 183

further testified that the defendant and Abdullah distributed a large amount of crack cocaine from the witness' residence. The witness would have also testified that the defendant and Abdullah introduced Carter to the witness as their source of crack cocaine in Norfolk, Virginia.

Another witness would have testified that the witness invited the defendant and Adbullah who resided in North Carolina to visit the witness in Virginia, but was unaware that shortly after their arrival, they began distributing crack cocaine in the Winchester and Front Royal, Virginia area. Upon the arrest of the defendant and Abdullah, the defendant called the witness and told the witness that he did not tell the witness about distributing crack cocaine so that the witness would not be involved. The witness would have further testified that when visiting Abdullah at the Warren County Jail, Abdullah told the witness that he and the defendant had been distributing crack cocaine and did not tell the witness so that the witness would not be involved.

Another witness would have testified that on or about February 22, 2005, the witness drove to pick up a "softball size" unknown quantity of crack cocaine in Norfolk and returned to Front Royal, while Carter and the defendant followed in Carter's vehicle. Once in Front Royal, the witness stated that the defendant and Carter took possession of the "softball size" unknown quantity of crack cocaine.

Lastly, the government would have proved beyond a reasonable doubt that the defendant had no applicable defense to the charges against him.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

9

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Two of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Two of the Indictment and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for October 31, 2005 at 10:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned

with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

August 10, 2005
Date